United States District Court
Southern District of Texas
**ENTERED**
April 29, 2022
Nathan Ochsner, Clerk

a. United States District Court
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | CIVIL ACTION NO. 4:20-CR-00452 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| WILLIAM DEXTER LUCAS, *et al*, Defendants. | § § § | |

**OPINION AND ORDER
GRANTING MOTION TO EXCLUDE**

The motion by the Government to exclude an affidavit executed by one of the Defendants in this action that seeks to incriminate himself and exculpate his co-Defendants is granted. Dkt 120. The affidavit is hearsay that doesn't fit within an available exception.

1. Background

The United States charges Defendants William Dexter Lucas, Deborah Jean Lucas, and Brian Michael Corpian with conspiracy to commit bank and wire fraud in violation of 18 USC § 1349, false statements to a bank in violation of 18 USC § 1014, wire fraud in violation of 18 USC § 1343, money laundering in violation of 18 USC § 1957, and false statements to the Federal Trade Commission in violation of 18 USC § 1001. These charges resulted from various loan applications, including an application for and receipt of a $50,000 Paycheck Protection Program loan by Jesus Survives Ministries Inc in April 2020 at the outset of the COVID-19 pandemic. Dkt 147.

Corpian is represented by counsel. But acting on his own, and without the knowledge of his counsel, he filed an

incriminating affidavit under seal on August 2, 2021. Dkt 62. He also attached the same affidavit to a motion to continue that he filed on August 6, 2021. Dkt 65.

The Corpian affidavit is dated August 18, 2020—three months after federal agents interviewed Defendants on May 19th, and about a month before they were indicted on September 17th. It contains seventeen paragraphs initialed by Corpian and is signed by both him and a notary public. Dkts 62 & 65. Corpian attests in this affidavit that he alone altered the financial documents used to obtain the PPP loan at issue. Dkt 62 at 1–2; Dkt 65 at 4–5. He also states that he used various email accounts of William and Deborah Lucas without their permission in the process of obtaining the loan. Dkt 62 at 3; Dkt 65 at 6. And he recants certain statements that he made to federal agents during the May 2020 interview that implicated William and Deborah Lucas. Dkt 62 at 3, 5; Dkt 65 at 6, 8.

William and Deborah Lucas separately moved to sever their trials from Corpian. Dkts 34 & 61. The motions were denied at hearing on December 16, 2021, for failure to demonstrate the "exculpatory nature and effect" of Corpian's potential testimony and the "willingness of" Corpian to testify at a severed trial. Dkt 115, citing *United States v Tencer*, 107 F3d 1120, 1133 (5th Cir 1997). Corpian attended the hearing and through counsel invoked his Fifth Amendment right to remain silent.

That hearing also touched on the potential admissibility of the Corpian affidavit. The Government was instructed to file the present motion to exclude. Dkts 115 & 120. The Government contends that the affidavit is hearsay without an exception. William and Deborah Lucas argue in response that the affidavit may be admitted under either Rule 804(b)(3) or Rule 807 of the Federal Rules of Evidence. Dkts 127 & 128.

    2. Legal standard

Rule 801 of the Federal Rules of Evidence defines *hearsay* as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and

2

(2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 802 states that hearsay isn't admissible at trial unless the evidentiary rules, a federal statute, or other rule prescribed by the Supreme Court provides otherwise. But exceptions apply, as explained and considered below.

When a party makes a proper objection to a statement on hearsay grounds, the proponent must demonstrate by a preponderance of the evidence that the statement either isn't hearsay or qualifies for admission under an applicable hearsay exception. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6803 (Westlaw 2021), citing *United States v Cornett*, 195 F3d 776, 782 (5th Cir 1999), and *Bourjaily v United States*, 483 US 171, 175 (1987).

    3. Rule 804

Rule 804 provides a hearsay exception where the declarant is unavailable to testify as a witness. It begins by specifying the five instances in which a declarant is considered *unavailable*. One is where he or she "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." FRE 804(a)(1).

But unavailability alone isn't provision for the wholesale admissibility of that declarant's hearsay. Indeed, it's merely a prerequisite to six exceptions to the general rule excluding hearsay outlined in Rule 804(b). Among these exceptions is Rule 804(b)(3), which provides that the general rule doesn't apply to an unavailable declarant's statements against interest, so long as the statement falls within the following metes and bounds:

> A statement that (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's

3

>claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

A party in a criminal proceeding who offers a hearsay statement under Rule 804 must therefore demonstrate three things—*first,* that the declarant is unavailable as defined by Rule 804(a); *second,* that the statement subjects the declarant to criminal liability such that a reasonable person wouldn't have made the statement unless he believed it to be true; and *third,* that corroborating circumstances clearly indicate its trustworthiness. *United States v Bell*, 367 F3d 452, 466 (5th Cir 2004).

### a. Unavailability to testify

Corpian has invoked his Fifth Amendment right against self-incrimination. Dkt 115. A witness who invokes that privilege is considered unavailable within the meaning of Rule 804(a)(1). *United States v Piper*, 912 F3d 847, 856 (5th Cir 2019, *per curiam*). As such, the Government rightly concedes that Corpian is unavailable for present purposes. Dkt 120 at 11.

### b. Statement against penal interest

The Corpian affidavit contains a direct confession to the crimes for which he's being charged. It would appear quite obviously to be against his penal interests. See *United States v Sarmiento-Perez*, 633 F2d 1092, 1101 (5th Cir 1981).

The Government nonetheless contends, "Corpian was pressured to take the fall by a co-conspirator who faced more significant penalties due to a more extensive criminal history." Dkt 120 at 12. Perhaps. But the Government presents no evidence at this time indicating, in fact, that Corpian was pressured to create the affidavit in question. Corpian himself has explicitly denied this contention. Dkt 102 at 2.

In any event, a respected treatise observes that the second prong of Rule 804(b)(3) is an *objective* inquiry. Wright & Miller, *Federal Practice and Procedure* § 6994. It asks whether a *reasonable person* in the declarant's position would have made the statement only if he believed it to be true. Id at § 6995. On the present record, no *reasonable* person in Corpian's position would create such an affidavit and then submit it to the court in which he's being tried unless he believed it to be true.

  c. Corroborating circumstances

Statements offered under Rule 804 must "bear adequate indicia of reliability, such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Piper*, 912 F3d at 856–57 (quotation marks and citation omitted). A district court may properly consider "any corroborating circumstances" so long as the statement at issue doesn't implicate the confrontation rights of any defendant. *United States v Dean*, 59 F3d 1479, 1493 (5th Cir 1995).

Two forms of corroboration are particularly relevant. *First,* courts assess whether other evidence is consistent with the hearsay statement. Wright & Miller, *Federal Practice and Procedure* § 6999. *Second,* courts assess "evidence regarding the circumstances surrounding the making of the statement." Ibid.

  i. Consistency with other evidence

The Corpian affidavit isn't entirely contrary to record evidence. But on the whole, it simply isn't consistent with the evidence currently before the Court. Addressing each declaratory assertion in turn highlights this inconsistency.

*First,* the affidavit alleges that Corpian applied for the PPP loan with several banks acting as an employee/owner of Jesus Survives Ministries Inc. Dkt 65 at 4. This conforms with statements made by William Lucas that he tasked Corpian with submitting the PPP loan application for JSM. Dkt 120 at 4–5. And the application originated from an IP address at 20134 Larkspur Landing, Richmond, Texas. Corpian resided there, but so did William and Deborah

Lucas. Id at 2. More importantly, Deborah Lucas told agents that she and William Lucas applied for the PPP loan and that Corpian didn't help. Id at 4.

*Second,* the affidavit contends that Corpian "altered documents which included business accounting, IRS tax forms, IRS tax identification and other related documents." Dkt 65 at 5. It also states that he produced and submitted the altered documents of his own volition, and that William and Deborah Lucas had no knowledge of these alterations. It's true that altered documents were submitted to obtain the PPP loan. See Dkt 120 at 2–3, 6 n 2. But the assertion that William and Deborah Lucas lacked knowledge is contradicted by other statements Defendants made to agents during the May interview. For instance, Deborah Lucas told agents that she and William Lucas submitted a Form SS-4 knowing that the employer identification number wasn't assigned to JSM. Id at 4. William Lucas identified and claimed two pertinent paystubs. Id at 6. He also confirmed that a falsified IRS Form I-9 bears his signature. Id at 7. And Corpian told agents that William Lucas filled out a particular Form 941 as well as certain lease documents, later asking Corpian to sign them. Id at 7; see also Dkt 40 at 36.

*Third,* the affidavit suggests that Corpian assumed the identities of William and Deborah Lucas (as well as that of Florine Constance Lucas, the late ex-wife of William Lucas) to secure credit without their consent or knowledge. Dkt 65 at 5–6. No evidence currently before the Court supports or contradicts this claim.

*Fourth,* the affidavit asserts that Corpian used email addresses belonging to William and Deborah Lucas since March 2014 without their consent or knowledge. Dkt 65 at 6. Corpian during his interview with agents stated that he sometimes used the JSM email address of William Lucas, and he identified several emails he sent to Allegiance Bank from that email account. Dkt 120 at 7. But each email so identified bore a signature block with Corpian's name. Ibid. And other emails were sent to Allegiance Bank from this email address without such a

6

signature block. Dkt 130 at 3. This at least plausibly suggests that some emails at issue didn't originate from Corpian.

*Fifth,* the affidavit notes that neither William nor Deborah Lucas ever had access to the altered documents because Corpian erased "all records of their transmittal and copies of the same" from the computer used to send the application. Dkt 65 at 7. Nothing currently before the Court supports or contradicts this assertion. But the suggestion that William and Deborah Lucas never had access to the altered documents is contradicted by their statements noted above.

*Sixth,* the affidavit contends that neither William nor Deborah Lucas had authority over Corpian or ever instructed or supervised him. Dkt 65 at 7. But as already noted, William Lucas told federal agents that he tasked Corpian with submitting the PPP loan. Dkt 120 at 5. William Lucas also stated that he decided how much JSM paid Corpian. Ibid.

*Seventh,* the affidavit claims that Corpian provided JSM information technology and office management services—and that he was therefore solely responsible for applying for and obtaining credit, loans, and other grants for the church. Dkt 65 at 7. Corpian stated during the May interview that he was an associate pastor and internet manager for JSM. Dkt 120 at 7. But nothing in the record supports the breadth of this overall contention.

*Eighth,* the affidavit states that Deborah Lucas opened a bank account "to negotiate the funds of said loan," but that she had no knowledge of the falsified documents that secured the loan. Dkt 65 at 7–8. To the contrary, the Bank of America account that received the funds was opened by Florine Constance Lucas, not Deborah Lucas. Dkt 120 at 3. And again, the evidence outlined above (including statements from Deborah Lucas herself) contradicts the claim that she had no knowledge of the falsified documents.

*Ninth,* the affidavit declares that Corpian made certain statements to federal agents during the May interview

7

because an agent "repeatedly and forcibly attempted to coerce me in to validating his false narrative or belief" regarding the actions of William Lucas. Dkt 65 at 8. Nothing corroborates this claim. In fact, the Court has already found that the questions posed by agents to William and Deborah Lucas during the May interview weren't accusatory and that the statements made by the Lucases were voluntary. Dkt 125 at 111–14 (denying motions to suppress); see also Dkt 124 at 91–170 (Agent Matthews testimony); Dkt 125 at 6–39 (Agent Gregory testimony); id at 40–83 (Agent Boxie testimony). Nothing suggests that the interview with Corpian proceeded along any different course. But even excepting statements made by Corpian to agents, statements made by William and Deborah Lucas that contradict the affidavit remain.

The foregoing makes clear that evidence currently before the Court isn't consistent with the Corpian affidavit.

> ii. Circumstances of the making of the statement

When assessing the circumstances surrounding the making of a statement, courts must consider (i) whether the declarant had at the time of making the statement pleaded guilty or was still exposed to prosecution for making the statement and the extent to which the declaration is truly against the declarant's penal interest; (ii) the timing of the statement and whether the statement was made spontaneously; (iii) whether other people heard the out-of-court statement and the party or parties to whom the statement was made; (iv) whether the declarant repeated the statement and did so consistently; (v) the relationship of the declarant with the accused, and whether there was any apparent motive or reason for the declarant to lie or misrepresent the matter; (vi) whether the statements were made under oath or made after Miranda warnings were given; and (vii) the nature and strength of independent evidence relevant to the conduct in question. *United States v Kelley*, 2007 WL 704003, \*3 (SD Tex), citing *United States v Lowe*, 65 F3d 1137, 1145–46 (4th Cir 1995); *United States v Rasmussen*, 790 F2d 55,

56 (8th Cir 1986); *United States v Guillette*, 547 F2d 743, 754 (2d Cir 1976); *United States v Thomas*, 571 F2d 285, 290 (5th Cir 1978); see also Wright & Miller, *Federal Practice and Procedure* § 6999.

*As to the exposure of the declarant to prosecution and the extent to which the statement is against his penal interest,* the Corpian affidavit was signed on August 18, 2020. Dkt 65 at 9. This is approximately three months after the May interview and one month before Defendants were indicted. Corpian was therefore still exposed to prosecution at the time he made the statement, and the statement was certainly against his penal interest. But Corpian also claims that he wrote it because his "health was severely deteriorating at the time" and he believed he might die. Dkt 59 at 6. And as one court aptly noted, potential criminal liability is "of no moment to a dead man." *United States v Angleton*, 269 F Supp 2d 878, 890 (SD Tex 2003) (quotation marks and citation omitted). This factor is neutral.

*As to the timing and spontaneity of the statement,* the affidavit certainly wasn't spontaneous. It instead reflects a great degree of planning and forethought. Corpian did ultimately send the affidavit to this Court. Dkts 62 & 65. But with the indictments issuing in September 2020, he had waited almost a full year before doing so. Dkt 52. And he did so only in the context of a dispute with his attorney after discovering that his co-Defendants had possession of the affidavit and planned to introduce it at trial. Dkts 62 & 65. This factor favors exclusion.

*As to the witnesses to the statement,* Corpian swore to the affidavit before notary public Drew E. Bizzell. Dkt 65 at 9. Confessing to a crime before a notary is a curious choice, to say the least. And how William and Deborah Lucas then came into possession of the affidavit and under what conditions (if any) is unknown. The strange circumstances in which this affidavit arose renders this factor neutral. See *United States v Johnson*, 19 F Supp 2d 720, 725 (WD Tex 1998).

*As to whether the declarant repeated the statement and did so consistently,* Corpian has affirmed the affidavit at several junctures. See Dkts 59, 62, 65, 102, & 104. But he's also contradicted it. For instance, his affidavit purports to take full responsibility for the allegedly unlawful PPP loan. See Dkt 65 at 4–9. But in one letter to the Court, he appeared to also implicate Florine Constance Lucas. Dkt 59 at 6; Dkt 120 at 5. And in an email to his attorney on which he copied the Case Manager, Corpian squarely stated that Florine Constance Lucas was "the real ring leader." Dkt 118-3 at 1. This factor weighs slightly in favor of exclusion.

*As to motives or reasons for the declarant to lie or misrepresent the matter,* several apparent motives exist. Corpian and the Lucases lived together at 20134 Larkspur Landing and continued to live together when they moved to College Station in June 2020. Dkt 40 at 18–19. Corpian maintained a familial relationship with William and Deborah Lucas, and he refers to them as his parents. For example, see Dkt 118-2 at 1; Dkt 118-3 at 1–2. And William and Deborah Lucas both told federal agents during the May interview that Corpian was their stepson. Dkt 130 at 5. William and Deborah Lucas are also both older and in poor health, with William Lucas facing significantly more liability for any involvement in the allegedly unlawful acquisition of the PPP loan due to his prior criminal history. Corpian did state that he doesn't believe that his co-Defendants are abusive or otherwise using him to take the fall. Dkt 102 at 2. But nothing rules out the possibility that Corpian was *willingly* sacrificing himself for those he considered parents. Additionally, August 2020 was a time when Corpian apparently experienced serious health issues, thought he might die, and thus wouldn't have had to face any charges. Dkt 59 at 6. This factor favors exclusion.

*As to whether the statements were made under oath and with knowledge of the Fifth Amendment right to silence,* Corpian made the affidavit under oath to a notary public. He stated in the affidavit that he was aware of his right

against self-incrimination, citing *Miranda v Arizona*. Dkt 65 at 4. And though Corpian didn't have a lawyer at the time of the statement, he submitted the affidavit to this Court when he had a lawyer and after being formally advised of his *Miranda* rights. Still, the fact that he filed the affidavit and made many of his inculpatory statements during a dispute with his attorney bears consideration. Dkts 56, 57, 59, 65, 98, 102, & 104. This factor weighs slightly against exclusion. But then again, it simply serves to emphasize the planned and non-spontaneous nature of the hearsay statements.

*As to corroboration by other evidence,* the nature and strength of independent evidence relevant to the conduct in question has been thoroughly discussed above. In short, the evidence at hand in large measure contradicts the affidavit. This factor heavily favors exclusion.

*As to other considerations,* though Corpian signed his affidavit before this action commenced, his erratic behavior over the course of litigation bears on the trustworthiness of his affidavit. See *Dean*, 59 F3d at 1493; cf *United States v Walker*, 410 F3d 754, 758 (5th Cir 2005). The relationship between Corpian and his attorney deteriorated over the course of this action. Dkt 56. This break came to a head when Corpian learned that his co-Defendants and the prosecutor had possession of his affidavit. Dkts 118-2 & 118-3. As a result, counsel for Corpian filed a motion to withdraw and Corpian filed a complaint of prosecutorial and defense-counsel misconduct. Dkts 56 & 59. Corpian also blind-copied the Case Manager on his responses to a series of emails sent to his own counsel. Dkts 118-1, 118-2, & 118-3. Corpian there admitted to the use of fentanyl and oxycontin. Dkt 118-3 at 1. He was ordered to cease all such communications. Dkt 57. But he subsequently filed the affidavit in question under seal on August 2nd. Dkt 62. And four days later he moved for a continuance as to a hearing on August 9th, attaching the affidavit to that motion as well. Dkts 64 & 65. Corpian then removed his monitoring device and fled to California, where he was later apprehended. ME of 08/09/2021 & Dkt 84; *Walker*, 410 F3d

11

at 757 (disappearance of declarant before trial demonstrates lack of trustworthiness). He later filed three more documents alleging his counsel was ineffective, but his relationship with counsel was restored at *ex parte* hearing on December 10th. Dkts 98, 102, & 104; ME of 12/10/2021. Corpian then invoked his Fifth Amendment right to silence at a lengthy hearing on December 16th in the face of questioning by counsel for William and Deborah Lucas about the affidavit. Dkt 115. This volatility favors exclusion.

Based on the above, the affidavit in question doesn't bear adequate indicia of reliability. To the contrary, the facts before the Court—including Corpian's own erratic conduct—undermine the trustworthiness of the document.

The hearsay exception of Rule 804 doesn't apply to the affidavit.

### 4. Rule 807

Rule 807 is a residual exception designed to encompass unforeseen circumstances in which sufficient indicia of the inherent trustworthiness of a hearsay statement exists, but the statement isn't covered by an existing hearsay exception. It states:

> Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

A respected treatise observes that the "first restriction is the key substantive criteria for admission." Wright &

Miller, *Federal Practice and Procedure* § 7063; *Walker*, 410 F3d at 758. A court must therefore find that the declarant "was particularly likely to be telling the truth when the statement was made." Ibid (quotation marks and citation omitted). And the Fifth Circuit holds that Rule 807 "is to be used only rarely, in truly exceptional cases." *Walker*, 410 F3d at 757. The proponent thus "bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *United States v El-Mezain*, 664 F3d 467, 498 (5th Cir 2011) (quotation marks and citation omitted).

Deborah Lucas cites *United States v Slatten*, 865 F3d 767 (DC Cir 2017). The DC Circuit there found Rule 807 to apply because the non-testifying co-defendant had the incentive to speak truthfully, he consistently reported the essential details of his story, and the evidence corroborated his statements. Id at 808. None of that can be said here. Indeed, much of the discussion about Rule 804 indicates why the Corpian affidavit isn't exceptional within the comprehension of Rule 807, as it finds that Corpian had several incentives to lie, hasn't consistently adhered to statements contained within the affidavit, and more evidence than not *contradicts* the affidavit. In short, the affidavit is in no way supported by guarantees of trustworthiness.

The residual hearsay exception of Rule 807 doesn't apply.

### 5. Conclusion

The motion by the United States of America to exclude Defendant Brian Corpian's August 18, 2020, affidavit is GRANTED.

Not presently before the Court is fulsome testimony of what Defendants allegedly told federal agents on the day of the subject interviews. This Order thus necessarily relies on representations by the Government as to what the agents will ultimately testify to in that regard. Their testimony at trial could potentially change disposition of the present motion. Defendants may thus raise further

motion in this regard during trial outside the presence of the jury.

So ORDERED.

Signed on April 29, 2022, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge