UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-452-S |
| | § | |
| WILLIAM DEXTER LUCAS | § | |
| a.k.a. Bill Lucas, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas, and Zahra Jivani Fenelon, Assistant United States Attorney, and the defendant, William Dexter Lucas ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 1 of the Second Superseding Indictment. Count 1 charges Defendant with conspiracy to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the second superseding indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 30 years and a fine of not more than $1,000,000 or twice the loss or gain. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 5 years. *See* Title 18, United States Code, sections 3559(a)(2) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to 3 years,

without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(2) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or

"collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

8. The United States agrees to each of the following:

3

(a) If Defendant pleads guilty to Count 1 of the second superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the second superseding indictment at the time of sentencing; and

(b) The United States will not move for Defendant's detention at the time of Defendant's guilty plea.

### Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the second superseding indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

12. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

5

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 1 of the second superseding indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

William Dexter Lucas, a.k.a. Bill Lucas (Lucas) is married to Deborah Jean Lucas (Deborah) and was previously married to Brian Michael Corpian's (Corpian) mother, Diane Corpian. Corpian met Lucas in early 2000 when Lucas was dating and claimed to marry Brian's mother, Diane Corpian. After Lucas and Diane Corpian separated, Lucas began a relationship and married Deborah. After Diane Corpian's passing in 2014, Lucas claimed to still be married to Diane Corpian and therefore claimed ownership interest to Diane Corpian's house at 20134 Larkspur Landing, Richmond, Texas. Corpian, Lucas, and Deborah all resided at 20134 Larkspur Landing, Richmond, Texas, and it is the listed address for Jesus Survives Ministries (JSM). JSM and the Larkspur Landing address was utilized in false car loan applications, Paycheck Protection Program (PPP) loan applications, Economic Injury Disaster Loan (EIDL) applications, and identity theft reports to the Federal Trade Commission (FTC).

JSM was registered as a Texas corporation, organized for non-profit purposes, whose Articles of Incorporation were filed on or about March 31, 2020. The Articles stated Lucas was the President of JSM, and the Vice President and Secretary of JSM was Corpian. Lucas held himself out as the Lead Pastor of JSM and Deborah represented she was a Pastor at JSM. Deborah was then named as the new Registered Agent of JSM on or about May 5, 2020. This change was executed by Lucas. The registered

office was transferred from the residential property located at 7036 Dairy Ashford, Houston, Texas, to the residential property located at 20134 Larkspur Landing, Richmond, Texas.

From on or about 2014 there were no meetings, or congregational or pastoral services conducted by Lucas, Deborah, Corpian, or in the name of JSM—either at the Larkspur residence or the College Station residence all three resided at prior to moving to the Larkspur residence.

Lucas, Deborah, and Corpian made false statements regarding their payroll from JSM in submitting car loan applications to banks or financial lenders for the purchase of cars at multiple dealerships, including Spring Branch Honda, Classic Chevrolet Sugar Land, Sterling McCall Toyota, Don McGill Toyota, and Big O Dodge. All dealerships, but for Big O Dodge, are in the Southern District of Texas. Car loan applications were sent to through the internet to banks or financial lenders whose servers were located outside of Texas. Lucas would complete, and direct Deborah and Corpian on how to complete car loan applications—including listing JSM as their employer and the amount of payroll received. Through false statements made on car loan applications, Lucas acquired a 2019 Toyota Tundra and Deborah acquired a 2020 Toyota Corolla as listed in Counts 2 and 3 of the second superseding indictment. Corpian accompanied Deborah to the Toyota dealership when Deborah filed the application and made the purchase of the Toyota Corolla. While filling out the application for the Toyota Corolla, Deborah called Lucas on the phone to guide her as to what to list as employment and income. In or about May 2020, after the PPP loan to JSM was funded for $50,000, Lucas and Deborah traveled to South Carolina. While in South Carolina, Deborah called Corpian to complain about Lucas attempting to purchase a pickup truck in South Carolina.

In or about March-April 2020, Lucas made false certifications regarding JSM in applications for EIDLs in the name of JSM and his own name submitted to the Small Business Administration (SBA). On multiple EIDL applications, Lucas falsely stated that JSM had gross revenues of $969,843 or

$850,000 for the twelve months prior to January 31, 2020. EIDL applications were sent through the internet to the SBA whose server is located outside of Texas, thus traveling via interstate commerce. Lucas made calls or directed Corpian to make calls to the SBA to inquire about the status of the EIDL application. During one of the calls made by Lucas to the SBA, Lucas claimed that the SBA was discriminating against churches.

Lucas told Corpian and Deborah that he had applied for Paycheck Protection Program (PPP) loans in or about April 2020. Lucas had Corpian and Deborah sign documents as part of the PPP loan applications. Florine "Sassman" was listed as the accountant and drafter for several of the records provided as part of the PPP loan applications. Florine "Sassman" is Florine Lucas and Lucas' ex-wife. Florine did not have any affiliation with JSM, was not JSM's accountant, and did not draft or submit any of the PPP loan applications.

On or about April 6, 2020 a PPP loan application and supporting documents were submitted to Wallis Bank by Lucas which contained false statements regarding JSM—including that JSM was and had been a solvent and thriving religious organization; that JSM was an employer, making payroll and withholding taxes from its employees' wages, including the submission of false Employer's Quarterly Federal Tax Return forms 941 and alleged payroll records for JSM. The PPP loan application to Wallis Bank was sent to through the internet and Wallis Bank's server is located outside of Texas.

The PPP loan applications to Allegiance Bank submitted by Lucas contained false statements regarding JSM—including that JSM was and had been a solvent and thriving religious organization; that JSM was an employer, making payroll and withholding taxes from its employees' wages, including the submission of false Employer's Quarterly Federal Tax Return forms 941; alleged payroll records for JSM; documents to substantiate that the residence located at 20134 Larkspur Landing, Richmond, Texas, was leased for JSM including a lease agreement, as well as an altered TXU Energy bill for that address

8

which falsely reflected the account holder was JSM. The April 4, 2020 PPP loan application and supporting documents was submitted by Lucas to Allegiance Bank, even though the application listed Brian Michael Corpian as the applicant. The April 6, 2020 PPP loan application with supplemental documents was submitted by Lucas to Allegiance Bank. The PPP loan applications to Allegiance Bank were sent to through the internet and Allegiance Bank's server is located outside of Texas.

Lucas sent accusatory and intimidating text messages and emails to bankers at Wallis Bank and Allegiance Bank, who were reviewing his PPP loan submission, regarding the bank's alleged failure to review and fund the loan quickly. Lucas boasted about sending these accusatory and intimidating emails and text messages to bank employees to Corpian.

On or about April 23, 2020, Lucas and Deborah caused bank account xxxxxxxx3431 to be opened at Bank of America (BOA) in the name JSM. On May 1, 2020, Deborah and Florine went to Bank of America in order to procure the $50,000 in PPP loan funds deposited to the BOA JSM account from Allegiance Bank. On May 5, 2020, Lucas made a notarized statement that he would like to add Deborah on to the business JSM at Woodforest account xxxxxx1596. On May 5, 2020, Deborah and Lucas opened a checking account in the name JSM at Woodforest National Bank (Woodforest), account xxxxxx1596, using Tax identification Number xx-xxx4065. On May 5, 2020, Deborah also opened a debit card, Master Card xxxxxxxxxxxxxx7337, at Woodforest National Bank. On May 5, 2020, Deborah also opened a personal bank account in her own name at Woodforest National Bank, account xxxxxx5860.

On May 5, 2020, Deborah deposited BOA cashier's check 1301617369 payable to Jesus Survives Ministries Inc. in the amount of $49,985 (the $50,000 in loan funds less a $15 fee) into Jesus Survives Ministries account xxxxxx1596 at Woodforest National Bank. On May 11, 2020, two transfers of loan funds were made from the Jesus Survives Ministries account xxxxxx1596 into Deborah's personal account xxxxxx5860, one for $188 and one for $1,200.

On or about May 19, 2020, seizure warrants were executed for the loan funds proceeds: $46,285.22 was seized from JSM's account xxxxxx1596, and $392.24 was seized from Deborah's account xxxxxx5860.

Lucas filed and caused Corpian to file false reports under the penalty of perjury to the Federal Trade Commission (FTC) and claim that his debts associated with car loans were due to his being a victim of identity theft. Lucas filed the February 20, 2020 (reference number ending in 5182) and March 3, 2020 (reference number ending in 7606) false identity theft reports as alleged in Counts 22 and 23 of the second superseding indictment. Lucas directed and caused Corpian to file the May 15, 2020 false identity theft report, with reference number ending in 6004 as alleged in Count 24 of the second superseding indictment.

On May 19, 2020, four agents arrived at Larkspur Landing and interviewed Lucas, Deborah, and Corpian. Corpian was interviewed by two agents, while Deborah was interviewed by the other two agents. Following the completion of Corpian's interview, Lucas approached two agents without the use of any cane, wheelchair, or other device, and spoke to the agents.

After the interviews with agents, Lucas drafted a false affidavit and directed Corpian to sign it, and have it notarized. Corpian had the affidavit signed and notarized on August 18, 2020. The August 18, 2020 affidavit is false, including but not limited to the following false assertions: Corpian applied for the PPP and EIDL loans alone; altered documents submitted as part of the applications; that Lucas and Deborah had no knowledge of the alterations of the documents submitted; and used Deborah and Lucas' emails without their consent or knowledge. Lucas informed Corpian that it was okay to initial and sign the affidavit because it was Lucas and Deborah's "insurance" in case the government put Corpian on the stand. Lucas informed Corpian that Lucas could not go back to prison and that Corpian was young, could handle prison, and that the government would not send Corpian to jail. Corpian did

not want Lucas or Deborah to go to prison and was also worried that he would be kicked out of the house. Corpian initialed, signed, and had the false August 18, 2020 affidavit notarized. The August 18, 2020 affidavit was filed by Lucas with this Court in United States v. Lucas, et. al, criminal number 4:20-cr-452, on August 6, 2021, as part of an Opposed Motion to Continue with Affidavit (DE 65). .

Lucas also drafted a false July 21, 2021 affidavit, in which the August 2020 affidavit is referenced and states that Lucas and Deborah had no knowledge of what Corpian and the "ministries bookkeeper" had done wrong in obtaining the PPP loan. As instructed by Lucas, Corpian had the affidavit signed and notarized on July 21, 2021. Lucas filed the July 21, 2021 affidavit under Corpian's name with this Court in United States v. Lucas, et. al, criminal number 4:20-cr-452, on July 26, 2021, as part of an advisory and complaint of prosecutorial and defense counsel misconduct with affidavit in support thereof.

After the filing of the August 18, 2020 affidavit on August 6, 2021, Lucas and Deborah influenced and assisted Corpian in fleeing to California to avoid being present and/or testifying in the current case, United States v. Lucas, et. al, criminal number 4:20-cr-452. Lucas stated that it was in Corpian's best interest to flee. Lucas had previously advised Corpian to cut off his ankle monitor while in the hospital to test how quickly the pretrial officer or law enforcement would be notified. Because the notification was not immediate when Corpian had cut off his ankle monitor at the hospital, Lucas persuaded Corpian to cut off his ankle monitor once again. Deborah drove Corpian to purchase a backpack, sleeping bag, and a Greyhound bus ticket for Corpian to flee. Lucas provided Corpian approximately $2,000 and 10 50mg pills of Tramadol prior to Corpian's departure. Lucas wanted Corpian to stay in California for at least five years and Lucas offered to send Corpian money while he was in California.

11

### Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant agrees to pay full restitution to the victim regardless of the count of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim incurred a monetary loss of at least $ 50,000. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

20. Defendant stipulates and agrees that the property listed in the Second Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. Specifically, Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of the $46,285.22 seized from JSM's account xxxxxx1596 and the $392.24 seized from Deborah Jean Lucas' account xxxxxx5860 as proceeds of the conspiracy to commit bank and wire fraud.

21. Defendant stipulates and agrees that Defendant obtained at least $50,000 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of $50,000. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $50,000. Defendant agrees to the imposition of a personal money judgment in that amount.

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state. 23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

26. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United

States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _December 8_, 2022.

_____
Defendant

Subscribed and sworn to before me on _December 8_, 2022.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Jennifer B. Lowery
United States Attorney

By: _____
Zahra Fenelon
Assistant United States Attorney
Southern District of Texas

_____
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:20-CR-452-S |
| § | |
| WILLIAM DEXTER LUCAS § | |
| a.k.a. Bill Lucas, § | |
| Defendant. § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending second superseding indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

12/8/22
Date

16

I have consulted with my attorney and fully understand all my rights with respect to the second superseding indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____        12/8/2022
Defendant                                              Date

17